UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

| | |
|---|---|
| WILLIAM J. STUER, JR. and<br>LORIE A. STUER,<br><br>      Debtors.<br>_____/ | Case No. 13-32292-dof<br>Chapter 7 Proceeding<br>Hon. Daniel S. Opperman |

NOLAN AUCTION SERVICES, LLC,

      Plaintiff,

v.                                                                                                       Adv. Pro. No. 13-03272-dof

WILLIAM J. STUER, JR. and
LORIE A. STUER,

      Defendants.
_____/

## TRIAL OPINION

Nolan Auction Services, LLC ("Plaintiff") seeks a determination that the debts it alleges are owed to it by William and Lorie Stuer ("Defendants") are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).[1] The Court conducted a trial on August 5, 2014. The Plaintiff called Joseph Nolan, the sole member of the Plaintiff, and the Defendants as witnesses. Exhibits 1 - 11 were admitted without objection. The Court has considered the pleadings filed by the parties, the testimony of the three witnesses at trial, the exhibits admitted at trial, and the post-hearing closing argument briefs. For the reasons set forth in this Opinion, the Court

---

[1] The Plaintiff originally included an 11 U.S.C. § 523(a)(4) count in its complaint. However, the Plaintiff failed to make any argument under that count in its post-hearing closing brief. Accordingly, the Court considers that count withdrawn.

1

concludes that the Plaintiff has failed to meet its burden of proof under §§ 523(a)(2)(A) and (a)(6).

## Procedural Background and Facts

The Plaintiff alleges that the Defendants owed several debts to it at the time they filed their bankruptcy petition. The Plaintiff is in the business of buying and selling equipment and occasionally conducting auctions. The business relationship between the Plaintiff and Mr. Stuer began in 1999, but Mr. Nolan and Mr. Stuer were friends before they began doing business together. Mr. Stuer has conducted business during the relevant time period as Deepwoods Tree and Stone, then Deepwoods Trucking, and then Deepwoods Transit. Later, Mr. Stuer formed Stoney Creek Trucking, LLC, a limited liability company in which Mr. Stuer is the sole member. His wife, Ms. Stuer, does all of the bookkeeping. Mr. Stuer did some work planting trees and transporting equipment for the Plaintiff over the course of their business relationship.

On September 15, 2008, Mr. Stuer, in his individual capacity, and doing business as Deepwoods Tree and Stone, signed a promissory note and security agreement in favor of the Plaintiff in the amount of $25,035.00, which represented an accumulation of debts owed to the Plaintiff by Mr. Stuer over the years. The promissory note contained language granting the Plaintiff a blanket security interest in "all assets owned or hereafter acquired by Deepwoods Tree and Stone and William Stuer." Mr. Nolan testified that he did not file a UCC-1 financing statement for this transaction. The testimony of Mr. Nolan and Mr. Stuer indicates that there was a lot of give and take with regard to this debt, with Mr. Stuer making some payments and supplying services to Mr. Nolan and/or the Plaintiff to offset portions of this debt. The Plaintiff asserts that there is a remaining balance owing on this debt of $21,650.00. Mr. Stuer admits that there is an amount owing on this debt, but he testified that the Plaintiff failed to take into account

2

certain payments he had made and that the amount the Plaintiff claims remains owing is overstated.

On May 3, 2012, Mr. Stuer signed a promissory note and security agreement in the amount of $5,347.60 for the purchase of a 2005 Dodge Durango. This vehicle was titled in the name of Ms. Stuer and the title noted the security interest granted to the Plaintiff. That vehicle was traded in for another vehicle in September 2012, with what is purported to be a release of the title lien signed by Mr. Nolan. The Release of Lien is dated either August 3 or 7, 2012. Mr. Nolan testified that $1,500.00 was paid on this debt, but the last payment was made on June 29, 2012, and that he did not sign the release of lien. Ms. Stuer testified that Mr. Nolan did sign the release of lien upon payment of the remainder of the debt in cash. The Plaintiff asserts that there is a remaining balance owing on this debt of $3,847.60.

The Plaintiff asserts that another debt owed to it by the Defendants stems from two checks payable to the Defendants' business being deposited and cleared through the Plaintiff's account twice, resulting in an overpayment to the Defendants in the amount of $4,200.00. One check was in the amount of $2,000.00 and the second check was in the amount of $2,200.00. The parties do not dispute the fact that those two checks were deposited twice. What the parties do dispute is how these "double deposits" occurred and whether the second deposits were reversed. The Plaintiff asserts that the double deposits were intentional acts on the part of the Defendants or that, after realizing that the checks had been deposited twice, the Defendants should have taken additional actions to correct the situation. The Defendants claim that their bank, Bank of America, was having issues with their system and was depositing checks more than once and taking some time to reverse these transactions. Ms. Stuer testified that, when Bank of America reversed the transactions, they would do a lump sum debit of their account,

reversing a few separate double deposits at one time.  Mr. Nolan testified that the double deposit transactions involving these two checks were never reversed and that he did not receive any of these funds back.  Ms. Stuer testified that at least $2,000.00 was returned to the Plaintiff because she remembers that Bank of America did a lump sum debit of their account of $2,900.00, which reversed a $2,000.00 and a $900.00 double deposit.  Ms. Stuer testified that she could not find similar evidence that the $2,200.00 double deposit was ever reversed.

Lastly, the Plaintiff asserts that the Defendants owe it a debt that stems from Mr. Stuer's failure to complete a job for which he was paid in advance.  The Plaintiff paid Mr. Stuer $2,400.00 to paint a roller and Spartan trolley bus.  Apparently, $700.00 was for the painting of the roller and $1,700.00 was for the painting of the bus.  The roller was painted without any issues, but the bus sat on Mr. Stuer's property for approximately five years without much being done other than certain components being removed.  Mr. Stuer testified that the bus ran out of fuel and he was unable to obtain the necessary natural gas to re-fill the tank, so the bus sat on his property for several years.  Mr. Stuer testified that he disassembled the bus and claims that he did a substantial amount of work on it.  Mr. Stuer further testified that when he eventually had to have a drive way installed where the bus was sitting, he hired a towing service to tow it back to the Plaintiff.

The Defendants filed their Chapter 7 bankruptcy petition on June 28, 2013.  The Defendants listed an unsecured debt owing to the Plaintiff in an unknown amount on their Schedule F.

On September 27, 2013, the Plaintiff initiated this adversary proceeding by filing a complaint seeking a determination that the debts owed to it are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

The issues in this matter arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, ---- U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## APPLICABLE LAW

### A. 11 U.S.C. § 523(a)(2)(A)

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud or by use of a false statement in writing. 11 U.S.C. § 523(a)(2)(A) & (B). A discharge under section 727 does not discharge an individual debtor from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

5

*In re Rembert,* 141 F.3d 277, 280 (6th Cir. 1998). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

The purpose of section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *In re Omegas Group, Inc.*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *Rembert,* 141 F.3d at 281.

## B. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) authorizes a bankruptcy court to exclude a debtor from receiving a discharge "from any debt for willful and malicious injury by the debtor to another entity or the property of another entity." The exceptions to discharge are to be narrowly construed in favor of the debtor. *Monsanto Co., v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999)); *see also Walker v. Tuttle (In re Tuttle)*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) (recognizing "the axiom that requires this court to construe exceptions to the bankruptcy discharge narrowly and in favor of the debtor.") (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). A party must prove by a preponderance of the evidence that a debtor committed an injury that is both willful <u>and</u> malicious. Grogan, 498 U.S. at 279 (1991).

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the U.S. Supreme Court discussed and determined the meaning of the language used in 11 U.S.C. § 523(a)(6). The issue before the U.S. Supreme Court involved "whether a debt arising from a medical malpractice judgment attributable to negligent or reckless conduct" fell within 11 U.S.C. § 523(a)(6). *Id*. at 59. The Kawaauhaus argued that the malpractice award fell within the Section 523(a)(6) exception

6

because Dr. Geiger engaged in the intentional act of providing inadequate medical services which led to Mrs. Kawaauhau's injury. *Id*. at 61.

In analyzing the parameters of the language "willful and malicious injury," the Supreme Court found that:

> [T]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." . . . [T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences of an act*," not simply "the act *itself*."

*Id*. at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).

The Supreme Court further determined that to adopt the interpretation proposed by the Kawaauhaus would:

> place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor. . . . A "knowing breach of contract" could also qualify. A construction so broad would be incompatible with the 'well-known guide that exceptions to discharge "should be confined to those plainly expressed."

*Id*. at 62 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

More than a year later, the Sixth Circuit Court of Appeals considered the "willful and malicious injury" language contained in § 523(a)(6), in *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455 (6th Cir. 1999). The Sixth Circuit Court of Appeals interpreted *Geiger* and noted that:

> [t]he [Supreme] Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury." The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. Although the Supreme Court identified a

7

logical association between intentional torts and the requirements of § 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences.

*Id*. at 464.

Based on the language used and analysis of the Supreme Court in *Geiger,* the *Markowitz* Court announced the standard of the Sixth Circuit by holding that:

> unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*Id*. (quoting Restatement (Second) of Torts § 8A, at 15 (1964)); *see Kennedy v. Mustaine*, 249 F.3d 576, 580 (6th Cir. 2001).

In addition to proving a willful injury, a party must also prove that the debtor committed a malicious injury. "'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citing *Tinker v. Colwell*, 193 U.S. 473, 486 (1904)). If a party fails to prove either willful or malicious, the debt will be discharged. *Markowitz*, 190 F.3d at 463. Inferences can be made, however, if the circumstances surrounding the alleged injury warrant such:

> Determining whether a debtor acted both willfully and maliciously for purposes of § 523(a)(6) requires an examination of that person's state of mind. A debtor will rarely, if ever, admit to acting in a willful and malicious manner . . . [but] both requirements can be inferred through the circumstances surrounding the [involved] injury.

*O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000) (citations omitted).

## DISCUSSION

### A. September 15, 2008 Promissory Note

The Plaintiff argues that the $21,650.00 debt he alleges remains owing on the September 15, 2008, promissory note was listed as an unsecured debt, but it is in fact a secured debt, and that, as a result, the debt survives the bankruptcy and the Defendants must either reaffirm the debt or surrender the collateral. The Defendants argue that the promissory note was a secured loan, but it was never perfected, and the Plaintiff has not proffered any theory under which that debt can be deemed nondischargeable.

The promissory note contained language granting the Plaintiff a blanket security interest in "all assets owned or hereafter acquired by Deepwoods Tree and Stone and William Stuer." That debt was indeed listed as an unsecured debt on the Defendant's schedules. The Plaintiff did not file a claim in the Defendants' Chapter 7 case. The Plaintiff did not file a UCC-1 financing statement for this transaction. The parties agree that there is an amount remaining owing on this debt, but the amount remaining is in dispute.

The Plaintiff did not argue in this adversary proceeding that this debt should be deemed nondischargeable. Rather, the Plaintiff argues that the debt survives the bankruptcy and it must be either reaffirmed or that the Defendants must surrender the collateral. The Court has determined that raising this argument in this adversary proceeding is not the appropriate procedure for such a determination. Accordingly, the Court will not make any decision with regard to that argument in this opinion.

### B. Dodge Durango

The Plaintiff argues that the $3,847.60 debt owing on the promissory note related to the purchase of the Dodge Durango is nondischargeable under §§ 523(a)(2)(A) and (a)(6) because

9

the Defendants forged the Plaintiff's signature on the Release of Lien document. The Defendants argue that Mr. Nolan signed the Release of Lien upon the payment, in cash, of the remainder owing on the note, and the Plaintiff has failed to prove otherwise.

Ms. Stuer testified that the vehicle was traded in for another vehicle in September 2012. She testified that went to Mr. Nolan's store in Lapeer in August 2012, and that she paid the $3,000.00 that remained owing on the note, in cash, to Mr. Nolan and that he signed the Release of Lien. She further testified that she did not get a separate receipt because she thought that the Release of Lien was sufficient. The Release of Lien is dated either August 3 or 7, 2012. The title assignment for the trade in was dated September 7, 2012. Mr. Nolan testified that $1,500.00 was paid on this debt, but the last payment was made on June 29, 2012. He testified that he did not sign the release of lien.

The Plaintiff argues that a simple comparison of the signatures on the Release of Lien and the checks admitted into evidence would allow the Court to conclude that the signatures do not match. The Plaintiff argues that the signature on the Release of Lien is instead a very good attempt at forging Mr. Nolan's signature. The Defendant argues that the signature on the Release of Lien is clearly Mr. Nolan's signature.

The Court has reviewed the testimony of Mr. Nolan and Ms. Stuer and has reviewed the exhibits admitted into evidence. The Court closely observed the demeanor of Mr. Nolan and Ms. Stuer at trial and determined that Ms. Stuer's testimony regarding this issue was more credible. Also corroborating Ms. Stuer's credible testimony is the fact that, during the time period in question, the Plaintiff and Mr. Stuer were still in a working relationship, wherein Mr. Stuer was doing work for the Plaintiff and the Plaintiff was setting off amounts owed on debts from Mr. Stuer's checks. The Court finds that the Plaintiff has failed to prove that the Defendants forged

Mr. Nolan's signature on the Release of Lien. Accordingly, the Court concludes that the Plaintiff has failed to prove that the Defendants acted fraudulently or committed a willful or malicious injury against the Plaintiff with regard to this debt.

C. Checks Deposited Twice

The Plaintiff argues that the $4,400.00 debt owing as a result of the double depositing of the checks is nondischargeable under §§ 523(a)(2)(A) and (a)(6). The Defendants argue that the double cashing of the two checks was a bank error, which they thought had been corrected, and was not a voluntary or wrongful act.

As noted, the parties dispute how "double deposits" occurred and whether or not the Plaintiff received back some or all of the wrongly deposited funds. Ms. Stuer testified that Bank of America was having issues with their system and was depositing checks more than once and taking some time to reverse these transactions. Ms. Stuer testified that, when Bank of America reversed the transactions, they would do a lump sum debit of their account, reversing a few separate double deposits at one time. Ms. Stuer testified that at least $2,000.00 was returned to the Plaintiff because she remembers that Bank of America did a lump sum debit of their account of $2,900.00, which reversed the $2,000.00 double deposit from the Plaintiff's account and a $900.00 double deposit to another client's account. There was a bank statement submitted into evidence showing that at least $2,900.00 was reversed. Ms. Stuer testified that she could not find similar evidence that the $2,200.00 double deposit from the Plaintiff's account was ever reversed. The Defendants both testified that they thought the double deposit issues had been remedied by Bank of America.

The Plaintiff argues that, even if the Court accepts the Defendants' version of the events, the Defendants were aware of the double deposits and they acted intentionally in failing to correct the situation by simply writing a check to the Plaintiff.

After reviewing the credible testimony of Ms. Stuer and Mr. Stuer, the Court concludes that the Plaintiff has failed to prove that the Defendants were aware that the double deposit issue had not been remedied. The Court concludes that the Plaintiff has failed to meet his burden of proving that the Defendants acted intentionally or that they intended to deceive the Plaintiff with regard to this debt.

### D. Payment to Paint the Vehicle

The Plaintiff argues that $1,700.00 debt owing as a result of Mr. Stuer's failure to complete the painting work is nondischargeable under § 523(a)(6). Per the Plaintiff, Mr. Stuer's retention of those funds, without doing the work for which he was paid, constitutes conversion. The Defendants argue that Mr. Stuer did a significant amount of work on the bus, but he was unable to complete the work due to the bus being out of fuel.

Mr. Stuer testified that the problem with the bus arose from the fact that it ran on natural gas. In the course of moving the bus, it ran out of natural gas and the closest station to fill the tank was in the Detroit area. Mr. Stuer testified that he disassembled the bus and claims that he did a substantial amount of work on it. He further testified that when he eventually had to have a drive way installed where the bus was sitting, he hired a towing service to tow it back to the Plaintiff.

The Court concludes that the Plaintiff has failed to establish that the Defendants acted with the necessary intent or willfulness and maliciousness necessary to support § 523(a)(6)

12

count. While this Court has held that an intentional breach of contract can constitute a willful and malicious injury in certain circumstances, this situation is not such a case.

## CONCLUSION

The Court concludes that the Plaintiff has failed to meet its burden of proof with regard to the 11 U.S.C. § 523(a)(2)(A) and (a)(6) counts, and, therefore, those counts are dismissed. As noted, the Court considers the 11 U.S.C. § 523(a)(4) count withdrawn. Counsel for the Defendant is directed to prepare and submit an order consistent with this Opinion and consistent with the procedural rules of this Court.

**Not for Publication**

.

**Signed on December 02, 2014**

                                                   **/s/ Daniel S. Opperman**
                                                   **Daniel S. Opperman**
                                                   **United States Bankruptcy Judge**